[No. 2353. Decided December 14, 1896.]

JOHN B. PHINNEY *et ux.*, *Respondents*, v. JENNIE CAMPBELL *et vir*, *Appellants*.

EJECTMENT — WHEN LIES — EVIDENCE — BOUNDARIES — ESTOPPEL.

Possession of land by another, under mistake as to the actual boundary, is not sufficient to defeat an action of ejectment by one holding the legal title, but who owing to such mistake, has never had possession.

The fact that a division fence had been built between two adjoining owners through a mistake as to the true boundary line will not estop the legal owner from claiming beyond such fence, although

he may have admitted to an intending purchaser from the adjoining owner that the fence was the boundary, if, prior to the purchase, he had informed the purchaser that the line according to a recent survey was quite a distance south of the fence.

Where adjoining owners have not established a division fence between them as the real boundary, without regard to the legal calls of their deeds, but have allowed the fence to stand as the boundary until a proper survey should establish the true line, a purchaser from one adjoining owner acquires no greater rights than his grantor, in the absence of estoppel, even if the purchase were made under the supposition that the fence was the true boundary.

In an action of ejectment it is not error to admit in evidence a conversation between plaintiff and the defendants' grantor, when such conversation is in disparagement of the grantor's title.

Appeal from Superior Court, Whatcom County.— Hon. JOHN R. WINN, Judge. Affirmed.

*Bruce & Brown,* for appellants.

*W. H. Harris,* and *Charles H. Hurlbut,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This action was prosecuted in form of ejectment to recover possession of real estate. Prior to 1886, one Eugene Canfield was the owner of the north half of section 7, township 38 north, range 3 east (by the government survey). There had been a duplication of the west line corners of this section and stakes were set and survey marks made indicating the southwest corner some 258 feet north of the location made by the United States surveyor general. Adjoining Canfield's holding on the south one Kellogg had platted a tract of land known in his record as "Kellogg's second addition," which addition had been staked off and stakes set in the ground according to the stakes set 258 feet north of the government survey. In 1886, respondent bought a piece of land, comprising ten acres, of Canfield, and took from

him a contract for a deed calling for the following lands:   The south ¼ and south 15 feet in width of west ½ of south ½ of southeast ¼ of northwest ¼, section 7, township 38, range 3 east.

It is conceded that if this description is read by the official survey the southwest corner of lands called for lies 258 feet south of where respondent located; and if read by the duplicate corners and marks the lands exactly meet the calls in the deed.   The tract of land immediately south of the respondent's tract, viz., block 32 of Kellogg's addition, came by mesne conveyances from one Nicklin into the ownership and possession of one Barley, who occupied it and reduced it to cultivation.   A division fence was built between Barley and the respondent, although built by the latter, and, a portion of it, before Barley took possession of said block 32.   This fence, which was recognized for a time as a division fence, is 259 feet north of the true or legal line as called for in the deed; so that, if the rights of the parties are to be considered with reference to the proper survey as called for in the deed, the respondent's line would be moved south 259 feet, taking in land a portion of which had been occupied by Barley.   In 1893 the lot above described, which was occupied by Barley, was sold to the appellant Jennie Campbell; she entered into the possession of the same, and this action is brought to dispossess her.

If the statements made in appellants' brief were justified by the record, this case would involve some very close questions of law.   It is asserted that there is no conflict in the testimony; that the undisputed facts show that respondent Phinney bought this land from Canfield; that it was pointed out to him by an agent of Canfield, as it was presumed to lie on the face of the earth; that he entered into possession of

the land as the land which he had purchased, without
regard to the description in the deed, but as having
bought it actually designated by metes and bounds
observed; that, upon the occupation of the adjoining
land by 'Barley, the division fence was made and rec-
ognized as the actual and legal division between the
two lots of land, and that the legal line of division
was ignored by the two occupants; further, that when
the appellant went upon the land to purchase the
same from Barley or his agent, the respondent pointed
out to her the boundary line which was marked by
the fence above referred to, and told her that the line
was established there; that she bought upon this rep-
resentation of the respondent and would not have
bought otherwise. This is really the gist of the affirm-
ative defense pleaded in the answer. It is the con-
tention of the appellants that the respondents should
now be estopped from asserting title or right of pos-
session to the land which they pointed out, and they
have cited an array of authorities to show that where
boundary lines have been adopted or agreed upon
between adjoining proprietors they will be estopped
from denying the legal existence of said boundary.
But such is not the undisputed testimony. However,
before we pass to that, on the first proposition, that
the ejectment was a proper remedy in this case, we
think the undisputed facts show that there was not
such possession under the statute in the appellant or
her grantors as would prevent this action.

On the question of estoppel, conceding, without de-
ciding, that it has been sufficiently pleaded and that
Mrs. Phinney would be bound by the representations
of her husband, the testimony is about as conflicting
as testimony can well be. There is some testimony
by Mrs. Campbell and her daughter with reference to

the representations that were made by Phinney at the time they went to purchase the place, but they do not assume to be very definite; it is certainly not sufficient to overcome the presumption that the land intended to be sold or purchased was the land described without any ambiguity in the deed. The testimony of Mr. Bruce, who was the purchasing agent of the appellant, is more definite, and, if uncontradicted, under proper pleadings might go far to establish an estoppel *in pais*. Mr. Bruce rehearsed a conversation at some length, but stated substantially that Mr. Phinney pointed out to him, as the Barley land, the land in controversy, with the other portion of the land; that he stated to Mr. Phinney that he was looking at it with a view to buying it and wanted to know something of its boundaries, and that Mr. Phinney told him, among other things, that the boundary was indicated by the fence. This statement, however, is contradicted by Mr. Phinney himself. His testimony was as follows :

"When he first came out to look at the land he himself was alone; the ladies were not with him. I didn't know who he was, but he pointed to my fence and asked, 'Is this the division between the farms?' And I don't think Barley's name was mentioned, for I know mine was not, for I would have asked who he was; and I looked for him to say more. And the next I saw of him was with two ladies. I found that the ladies were there to purchase the place. I knew it was for sale and I wanted to make the correction after I made the statement, and I said to him, ' according to recent survey or correct survey, the line is quite a way south, and state this for your information,' and that is all the conversation that occurred, and I said no more."

If it be true, as testified by Mr. Phinney, that he told the purchasing agent that the line according to recent or correct survey was quite a way south and

that he told him this for his information, it was cer-
tainly enough, at least, to put the purchaser upon inves-
tigation and was in fact an absolute disclaimer of the
fact that the fence was really the division line be-
tween the two places.

Neither does the record bear out the contention
that this fence was established as a real boundary or
division line between the two places without regard
to the legal calls of the deed; for while it does not ap-
pear that the man, who pointed the land out to the
respondent Phinney when he purchased it, was an
agent or in any way connected with the grantor Can-
field, it can fairly, we think, be gathered from the
testimony of Phinney himself that he thought at the
time that the deed called for the land that he actually
occupied, which was north of this fence. That is as
far as the testimony goes. There is no testimony
showing that it was the intention of either Phinney
or Barley, the respondent's grantor, to arbitrarily and
conclusively establish the division line along the fence
or anywhere outside of the line called for by the deed.
In fact, the testimony undisputedly shows that, as soon
as the mistake in the survey was ascertained, which
was in 1892—and the deed from Barley to Mrs. Camp-
bell was not executed and the sale made until 1893—
the new survey was immediately recognized and re-
spected, and Barley waived all his rights to the land
north of the true line. Barley testified that, until the
fall of 1892, he did not know that there was much
error in the location of the fence line, but afterwards
was convinced that other parties had misinformed
him. When asked to state when and under what cir-
cumstances he first knew definitely the location of the
true boundary line between his land and that of the
respondents, his answer was:

"In the fall of 1892 Mr. Campbell, surveyor, New Whatcom, found one of the bearing trees and told me of it.  I then saw it for myself, made the measurements from the section corner and found I was occupying some of J. B. Phinney's land."

Now, if it had been the understanding between these adjoining owners that the line which they established by the fence was to have been the actual settled boundary line between them, Mr. Barley would not have been interesting himself in any measurements. But his testimony further on shows beyond any question that such was not the understanding.  He says:

"We agreed to let said rail fence remain as the line fence until the proper line could be located.  I never claimed the land adjoining Mr. J. B. Phinney's rail fence after finding the proper line between us, and was ready to give it up at any time."

To the query whether or not he had expressed any such willingness to Mr. Phinney or any other person, his answer was:

" I was quite ready for the fence to be moved and stated so to Mr. J. B. Phinney; and think I told some of our neighbors the same."

It is evident that from this testimony, if it was given to the jury under proper instructions and was believed, that no agreement had ever been entered into between the respondent and Barley which would tend to establish the fact that the respondent had waived the right to have his land bounded by the true line as called for by the deed; but that the exact reverse was the fact, and that Barley disclaimed any right to the possession of the land in dispute.

It must be uncontradicted that the appellant could not stand in any more favorable position, so far as the rights of the respondent are concerned, than could

14—16 WASH.

her grantor; so that, if she has any defense at all it would be that founded upon the representations that she alleges were made by the respondent; and, as we have before said, even conceding that this defense was properly pleaded, the testimony concerning it is conflicting. These questions were properly submitted to the jury and on this appeal must be deemed settled by the verdict.

We think no fault can be found by the appellants with the instructions given by the court. If their view of the facts was borne out by the testimony, the instructions would have warranted a verdict in their behalf. After reciting in substance the affirmative defense, the court instructed the jury as follows:

"In regard to one of the issues which I mentioned to you in the pleadings in reference to these defendants relying upon some disclosures made by Phinney as to where the boundary line between these two places was, I would instruct you that if you find from the evidence that prior to the defendants' buying the land or taking possession, they found one George S. Barley in the possession, and before buying the same of him they made inquiries, either in person or by agent, of the plaintiff John B. Phinney as to where the boundary line between said Barley's land and plaintiff's land existed, and that said Phinney in response pointed out such line or designated such line on the ground, and that the defendants, believing the line so pointed out to be the true line, purchased the land from Barley relying upon the fact that the line so pointed out was the correct line, and the plaintiff at the time of pointing out such line was advised where the legal line was, and you also find that the line so pointed out by the plaintiff, if he pointed it out, was a fence dividing plaintiff's land from Barley's, then the plaintiff is bound by such action and the defendants would hold the land up to this fence."

It is plain to see that, under this instruction, if the

jury believed the facts to be as represented by appellants, a verdict in their favor would have been inevitable.    Both this instruction and the others which the court gave were, to say the least, as favorable to the appellants as they ought to have been under the law governing such cases.

There is one objection made by the appellants to the introduction of the testimony, the acceptance of which over their objection they allege as error, viz., the permitting the witness Phinney to state a conversation with Requa and Barley.    We think, under the circumstances of the claim made by appellants of the agreement between Barley and Phinney in regard to the establishment of this line, that this testimony was admissible.

What we have said in regard to the conflicting character of the testimony answers the objection of the appellants that the instruction to the jury that the respondents could not recover if there had been a division fence between them and Barley, or if respondents had pointed out to appellants the lands as belonging to Barley, was disregarded by the jury.

The judgment will be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.