[No. 15488.  Department One.  January 19, 1920.]

ELVIRA B. SAMPLES *et al.*, *Appellants*, v. FRANK KERGAN
*et al.*, *Respondents.*[1]

BOUNDARIES (13) — ESTABLISHMENT — LOCATION OF LINES — EVI-
DENCE—SUFFICIENCY. The reconstruction of a division line fence is
sufficiently shown to have been on the original boundary line, where
the preponderance of the evidence was that both lines were four
feet south of the north wall of a concrete basement of a house still
in existence.

APPEAL (411)—REVIEW—FORCE OF EVIDENCE—VIEW OF PREMISES.
Undue weight to a view of the premises will not be found where the
court was not unduly influenced, and the findings were supported
by the preponderance of the evidence.

BOUNDARIES (18) — ESTABLISHMENT — RESURVEY. Rem. Code,
§§ 947-949, relating to the restoration of lost boundaries by a resur-
vey does not control actions to quiet title rested upon adverse pos-
session to a line fence the location of which was established by direct
evidence.

SAME — ESTABLISHMENT — ADJUDICATION—DECREE—CERTAINTY. A
judgment in an action between adjoining owners to establish the
boundary line is sufficiently definite where the decree calls for an
east and west line four feet north of the basement wall of defend-
ant's house, in view of the permanency of the monument referred to.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered April 11, 1919, upon
findings in favor of the defendants, in an action to
quiet title, tried to the court.  Affirmed.

*Charles E. Congleton,* for appellants.

*Chas. M. Fouts* and *C. B. W. Raymond,* for respond-
ents.

PARKER, J. — The plaintiff Elvira B. Samples, and
others, as executrixes and executors of the last will
and testament of Daniel Samples, deceased, and in
their own right, commenced this action in the superior

[1] Reported in 187 Pac. 383.

court for King county, seeking recovery of, and the quieting of title in themselves to, a strip of land about two feet wide lying along the southern boundary line of Samples addition to the city of Seattle, as against the claims of the defendants, Kergan and wife. Trial upon the merits in the superior court sitting without a jury resulted in findings and judgment denying to the plaintiffs the relief prayed for, and quieting title to the strip of land in controversy in the defendants. From this disposition of the cause, the plaintiffs have appealed to this court.

On June 3, 1893, James Galloway and Alice Galloway were the owners, each, of an undivided one-half interest in a tract of land consisting of approximately five acres, being nearly but not quite rectangular in form, bordering upon the easterly shore of Lake Union, in Seattle. On that day they divided the land between themselves, James Galloway taking the south half and Alice Galloway taking the north half, each executing and delivering to the other a deed of conveyance accordingly, wherein the portion taken by each was so described. Immediately upon the making of these mutual conveyances, they built a substantial picket fence upon an east and west line, which they then agreed to be the correct dividing line between their respective halves of the land. Ever since that time James Galloway and his successors in interest, of whom respondents are the last, have been in the open, visible and exclusive possession, adverse to all the world, of all of the land here in controversy lying south of the line of the fence built by the Galloways to establish the dividing line upon the ground between their respective tracts. It may be that in the building of the fence the Galloways did not succeed in placing it upon an east and west line so as to divide the land into two equal halves with exactness, but if not, the

want of exactness in that respect, it would seem, can be accounted for by their seeming attempt to mark the division upon the ground without having an exact survey made thereof by a surveyor; and since the tract so divided was not an exact rectangle in form, but had a broken line on the west boundary along the lake shore, it is at once apparent that the dividing of the tract upon the ground into north and south halves with exactness would be a problem hardly capable of solution without an exact survey. However, it is apparent that the fence so built by the Galloways to mark the dividing line between their respective tracts was, in any event, along its whole course, within approximately two feet of the exact theoretical dividing line between the two halves and, as between themselves, became the established dividing line between their respective halves. Whether or not such established dividing line, its establishment not being a matter of record, continued to be binding upon their successors in interest, it may be here conceded, would depend upon the continual recognition of it and possession by them accordingly. It is, however, all but conclusively proven in this case—indeed it seems to be conceded upon both sides—that possession on the part of James Galloway and all his successors in interest, including respondents, of all land here in controversy lying south of the line upon which the fence was constructed has been continuous, open, visible and adverse to all the world at all times since the construction of the fence, so that, when it is determined as a matter of fact where the line of that fence was and is upon the ground, such determination becomes decisive of this case in so far as the merits are concerned.

There is at present a fence along or near the line in controversy, which is claimed by appellants to be a wholly different fence from the one constructed by

the Galloways. Appellants claim that this fence was constructed by their predecessor in interest several years ago on a line some two feet north of the line of the original Galloway fence, which they claim was then still there, but in such a dilapidated condition that it was more practicable to build a new fence than to repair the old one. This new fence, as appellants claim, was built by one of their predecessors in interest without any idea of its being upon the boundary line of their property, or upon the line of the original Galloway fence, but only as a temporary fence to enclose their pasture lot. Appellants also claim that the remains of the original Galloway fence were, several years ago, entirely removed. It is plain that the present possession of respondents and their predecessors in interest has been up to the present fence at all times since it was constructed as claimed by appellants, whether that fence be in fact a new one located north of the line of the original Galloway fence or merely a reconstruction or repair of the old Galloway fence upon the line of its original location. Respondents claim that the present fence is the original Galloway fence repaired or reconstructed upon the line of its original location, and that their present possession of all the land here in controversy south of it is simply a continuation of the possession of their predecessors in interest.

In April, 1918, appellants caused to be surveyed and platted into lots and blocks what they claim to be the land acquired by them by mesne conveyances from Alice Galloway as the north half of the tract originally owned by the Galloways, and an exact survey of which, as claimed by them, shows their line to be some two feet south of the present fence, which line, they claim, is the one upon which the original Galloway fence was placed and up to which the possession of respondents

and their predecessors in interest extended, and no farther. It is the south line of this survey and plat, known as Samples' Addition, that appellants seek to have established as the line dividing the north and south halves of the original Galloway tract as divided by the Galloways in the year 1893. We have thus related, at what may seem unnecessary length in view of our conclusion, the facts leading up to this controversy, to the end that it may be made plain that the ultimate question determinative of the rights of the parties is simply the question of fact as to where the line of the original Galloway fence was located upon the ground, which is also the line up to which respondents and their predecessors in interest have maintained their possession at all times during the past twenty-five years.

The trial court found, in substance, that the present fence, whether it be a reconstruction or repair of the original Galloway fence, is in fact upon the line of the original location of that fence. The evidence is not free from conflict upon this question, but a careful reading of all the evidence convinces us that it clearly preponderates in support of such finding. Some nine or ten years ago, one of the predecessors in interest of respondents built a substantial dwelling house upon the land now owned by respondents. This house has a basement with walls of solid concrete of a very permanent character, the north wall of which, as we think the evidence shows, is four feet south of the line of the original Galloway fence, which fence, at the time of the construction of the house and basement, was in existence and upon the line of its original location. The north wall of this basement, we think the evidence clearly preponderates in showing, was located four feet south of the line of the Galloway fence, in accordance with actual measurements then made on the ground.

Without reviewing the evidence further, we think it sufficient to say that we think the conclusion cannot be escaped, in the light of this record, that the original Galloway fence line was and is four feet north of the north wall of the basement of respondent's house.

Contention is made that the trial judge erred in treating information acquired by him upon his view of the premises and the disputed line as evidence independent of the testimony heard by him upon the trial, to a greater extent than he was warranted in doing. We think he was not so unduly influenced, in view of the testimony and other evidence given at the trial, and that he regarded such information in no different light, in connection with the evidence admitted on the trial, than he was warranted in doing, under our decisions in *Seattle & Montana R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864; *Aldredge v. Oregon-Wash. R. & Nav. Co.,* 79 Wash. 349, 140 Pac. 550, and *Elston v. McGlauflin,* 79 Wash. 355, 140 Pac. 396, Ann. Cas. 1916A 255. Without pursuing this inquiry any further, however, we think that, in any event, the evidence given upon the trial compels the conclusion that it clearly preponderates in support of the court's finding as to the location of the Galloway fence, independent of the judge's view of the premises.

Some contention is made rested upon §§ 947-949, Rem. Code, relating to the restoration of lost or uncertain boundaries, and our decision in *Snell v. Stelling,* 83 Wash. 248, 145 Pac. 466, that this case should have been decided upon the theory that it involved only the restoration of a lost or uncertain boundary, and therefore determinable alone by a survey of the exact theoretical line between the north and south half of the original Galloway five-acre tract. This contention, we think, is wholly untenable, in view of the fact that respondents' rights rest, in their last

analysis, upon the adverse possession of themselves and their predecessors in interest, continuing over a period of more than twenty-five years.

Some contention is made that the judgment of the trial court is not sufficiently certain in its terms in determining the location of the line dividing the appellants' and respondents' properties. The judgment touching that question, in so far as it refers to the north line of respondents' land, reads as follows:

"It is therefore ordered, adjudged and decreed by the court, that a fence running east and west practically parallel with and four feet north of the basement wall of defendants' house, and being on the northerly line of the following described premises situated in the county of King and state of Washington:

"Beginning at a point where the easterly line of Minor avenue north intersects the north line of what is known as the J. Galloway tract, thence easterly 120 feet along the said north line of said Galloway tract; . . . is now located upon the line of an old picket fence constructed in the year 1893 by James Galloway and Alice Galloway, his wife, as a division fence between their respective premises."

It seems to us that, in view of the permanency of respondents' house and its concrete basement wall as a monument, the judgment is sufficiently certain in fixing the location of the line between the two ownerships. It is plain that the line is determined to be an east and west line and that it is four feet north of the foundation of respondents' house. The recital in the judgment that it is practically parallel with the north line of the basement wall, we think, is of no consequence except as a recognition of the possibility of the north basement wall not running exactly east and west. The decree, we think, clearly means that the property line runs east and west and is four feet north of the most

northerly point of the north line of the basement wall of respondents' house.

We are quite convinced that the judgment of the trial court must be affirmed.

It is so ordered.

HOLCOMB, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.