[No. 33091.   Department One.   October 13, 1955.]

C. C. BOOTEN *et al., Respondents, v.* NELLIE PETERSON *et al., Appellants.*[1]

'Reported in 288 P. (2d) 1084.

*Metzger, Blair & Gardner,* for appellants.

*J. W. Graham,* for respondents.

SCHWELLENBACH, J.—This is the second appeal in this case. See *Booten v. Peterson,* 34 Wn. (2d) 563, 209 P. (2d) 349. We refer to the prior opinion for a statement of the facts, background, and circumstances leading up to the litigation. Subsequent to the first trial, Mrs. Peterson sold to the Merediths, and they were added as parties defendant.

The controversy involves a boundary line between beach lots located on Hood Canal. At this time, the Bootens and the Merediths, successors in interest to Nellie Peterson, hold deeds to the adjoining lots.

In 1947, Booten and wife instituted an action alleging that the boundary line between their property and the adjoining property, then owned by Nellie Peterson, had become lost

and uncertain and, as provided in Rem. Rev. Stat., §§ 947, 948, and 949 (See RCW 58.04.020 *et seq.*), prayed for the appointment of a commission to determine the location of the boundary line. By way of affirmative defense and cross-complaint, the defendants advanced the theories of adverse possession and common grantor. The trial court found that the disputed area was vested in defendant Nellie Peterson by virtue of adverse possession and dismissed the action. On appeal, we held that defendant had failed to sustain the burden of proving either adverse possession or her right to the disputed area on the common grantor theory and ordered a new trial.

In the second trial, new and additional evidence was introduced by the defendants on the question of adverse possession and also on the common grantor theory. The trial court concluded that they failed to sustain the burden of proof as to either defense, and thereupon appointed a commission as prayed for by the plaintiff. The court adopted the findings of the commission and entered judgment for permanent location of the boundary line between the two properties. We quote finding No. 7:

"That the defendants based their defense to said action, as in the former trial of the cause, upon a claim of adverse possession of the disputed area and in addition thereto, upon the common grantor theory. That while defendants presented some new and additional evidence in support of their defenses, such evidence was not basically different from the evidence presented in the original trial of the cause, and added no new element in support of the said defenses, but merely to volume, and does not call for any change in the rulings made by the Supreme Court upon appeal from the original judgment, and as to said defenses the court finds that the decision of the Supreme Court constitutes the law of the case and nothing in the evidence herein calls for a departure from said rulings, and therefore finds that the defendants have failed to substantiate said defenses or either of them."

In *Buob v. Feenaughty Machinery Co.*, 4 Wn. (2d) 276, 103 P. (2d) 325, in discussing the "law of the case," we said:

"An equally well settled rule is that, where the weight and sufficiency of the evidence have been passed upon in a former appeal, and the evidence at a second trial is substantially the same, the decision on the former appeal is decisive in a second appeal. [Citing cases.]

"The necessary corollary to this latter rule is that, when the evidence presented on the second appeal is materially different from that presented and passed upon in a former appeal, the decision in the prior appeal is not conclusive. 5 C. J. S. 1293, § 1834; 3 Am. Jur. 553, § 1000."

The trial court recognized this rule and considered the additional testimony, but stated:

"There is new and additional evidence upon the subject of adverse possession in the record of the second trial. We have carefuly examined and weighed it. The general intent was to show long and uninterrupted use of the disputed area *up to the boundary line as claimed by defendants*. Much of such evidence has to do with frequent and continuous use of the premises by the guests of defendants. There can be no doubt of such frequency and continuity. But considering inter alia the matters disclosed by a view of the premises and already set forth, it does not support use to the claimed boundary line. It goes no further than to show use of the croquet area generally for play, recreation and the parking of cars. The gathering of oysters which grew naturally, without cultivation, upon the beach of the disputed area, is not sufficiently significant to change the picture."

We cannot agree. The disputed property was used as a beach place and summer home. The space between the house (the location of which is not in dispute) and the disputed boundary was used as a recreation center every week end during the summers. Visitors camped there, as did a troop of girl scouts. Trees were planted by Mr. Peterson along the road for the one-hundred-foot width claimed by appellants and their predecessors. This particular one-hundred-foot property was known by everybody as the Peterson property. Peterson drove stakes at each end of his boundary as he knew it, feeling that they marked the line set out by the original owner. Those stakes were shown to Loring (Booten's predecessor in interest) shortly after he purchased his tract in 1923. Loring at that time said that the line was

all right, and he thereafter respected it up to 1946, when he sold his tract. The evidence produced at both trials, coupled with the new and additional evidence of use produced at the second trial, was sufficient to constitute adverse possession on the part of the Petersons.

■ The trial judge viewed the premises and, in his memorandum opinion, detailed what he found and what he did not find. It is apparent that, in determining that no use of the disputed property was shown to the claimed boundary line, he considered the matters disclosed by his view of the premises. The only purpose of such a view by the trial judge is to aid him in his understanding of the evidence introduced in the case. *In re Schmitz,* 44 Wn. (2d) 429, 268 P. (2d) 436.

The trial court indicated that the defendants had failed to show long and uninterrupted use of the disputed area up to the boundary line, as claimed by them. We stated in *Johnson v. Conner,* 48 Wash. 431, 93 Pac. 914:

"Of course, it is not necessary for a person claiming a certain tract of land adversely to prove that he has actually occupied, used, improved, or inclosed all of said tract. But it must appear that he openly and notoriously claimed the entire tract and that his possession, use, or improvement of a portion thereof was intended to hold, not merely that particular portion, but the whole of the entire tract."

■■ It is clear, from the acts of the Petersons, that they intended to claim title to all of the disputed area and to hold it as the owner. See *Taylor v. Talmadge,* 45 Wn. (2d) 144, 273 P. (2d) 506; *O'Brien v. Schultz,* 45 Wn. (2d) 769, 278 P. (2d) 322. Their possession of the disputed area for more than the statutory period was actual and uninterrupted, open and notorious, hostile and exclusive, and under a claim made in good faith. *Taylor v. Talmadge, supra.*

■ The trial court assessed the costs of the commissioners equally between the parties. Appellants having raised the question of adverse possession in their pleadings, which we find to be justified, it was error for the court to appoint a commission. *Glenn v. Wagner,* 199 Wash. 160, 90 P. (2d) 734. Appellants therefore cannot be charged with

any portion of the costs of the commission. See *Porria v. Castle Rock,* 82 Wash. 103, 143 Pac. 315.

The judgment is reversed and remanded, with direction to grant the relief as prayed for in the cross-complaint.

HAMLEY, C. J., DONWORTH, and FINLEY, JJ., concur.

OTT, J., concurs in the result.