[No. 133-41283-3.    Division Three.    October 29, 1970.]

THOMAS J. DRUMHELLER, JR., et al., Appellants, v. MARGARET M. NASBURG et al., Respondents.

*Robert A. Milne* (of *Milne & Peterson*), for appellants.

*Paul A. Klasen, Jr.,* for respondents.

EVANS, C. J.—Plaintiff brought this action to quiet title to certain real property located in Grant County. Defendants counterclaimed, basing their claim on adverse possession.

From a judgment quieting title in defendants, plaintiffs appeal.

The parties to this action are owners of contiguous property. For convenience, plaintiffs' property will be referred to as section 9, and defendants' property as section 16. According to the legal description of the respective properties the parties to this lawsuit each own a portion of a large draw. Because it contains a series of springs, the draw stands out from its arid surroundings. The trial court, in its oral decision, characterized it as an oasis in a semi-desolate setting.

In 1920 C. W. McLeod, who then owned section 16, conceived the idea of developing this natural phenomenon into a fish hatchery. Toward this end, he enclosed the area of the draw containing springs by placing a barbed wire fence around it. The fence enclosed 1½ acres in section 9. This is the acreage subject to litigation and referred to herein as the disputed area.

The trial court made and entered the following findings of fact to which plaintiffs assign error:

## IV.

That the [disputed area] is an important part of the fish hatchery established by said C. W. McLeod in the 1920s; that many thousands of dollars of improvements have been made through the years on the fish hatchery which is now known as Troutlodge Hatchery comprising approximately 50 acres of which the disputed property . . . of less than two acres is an intregated part, and which disputed property, from 1920 to about 1959 has always been considered by all persons as a part of the fish hatchery owned and operated by the Defendants and their predecessors in interest.

## V.

That the said fish hatchery has been in continual operation from its beginning 1920 to the present time, and the disputed property has always been occupied and controlled by the Defendants and their predecessors in inter-

est; that the Defendants have developed and done considerable work in the disputed area.

## VI.

That the fence constructed by C. W. McLeod enclosing the disputed property also enclosed the property being occupied by C. W. McLeod on the W ½ Section 16, Twp. 27 N., Range 27, E.W.M. That the original fence constructed by C. W. McLeod in 1921 which enclosed the disputed property . . . was maintained by the Defendants and their predecessors in interest for over thirty years. That the only gate in the fence which enclosed the disputed property was located on the undisputed property of the Defendants and their predecessors in interest.

## VII.

That the [disputed property] is a part of a natural phenomena spring arising from an otherwise desert and arid area. That the fencing of the disputed property, which includes the springs which furnish 10% of the water for the fish hatchery, is an integral part of the hatchery operation commenced by C. W. McLeod, 1921, and said fence first built in 1921 was notice to the world that said disputed property and spring were being claimed by the defendant's predecessor in interest; that said spring and property have been an intricate [sic] part of defendants' fish hatchery operation continuously since 1920 to date of trial.

## VIII.

That in the operation of a fish hatchery it is very important to control the source of water in order to avoid contamination of the water and to control water flow.

## IX.

The Plaintiffs or his [sic] predecessors in interest have not occupied or asserted dominion over the disputed property. The plaintiffs' immediate predecessor in interest, the Plaintiff's father, who was very familiar with the disputed property and was an attorney and was familiar with the laws of adverse possession, under oath in 1951, at the time he held the bare paper title to the disputed

property, disclaimed any interest in or to the disputed property.

## X.

That the Defendants and their predecessors in interest for more than forty continuous years have been in actual, uninterrupted, continuous, open, notarious, hostile and exclusive possession, under a claim of right made in good faith of the property described in Paragraph II.

## XI.

That record title to the above described premises is vested in Thomas J. Drumheller, Jr. by a warranty deed dated August 3, 1956 as to an undivided one-half interest and by the inheritance from the estate of Thomas J. Drumheller, Sr. who passed away on the 28th day of January, 1954. Thomas J. Drumheller, Sr. acquired record title by a deed dated April 16, 1947, as a result of conveyances arising out of the settlement of the estate of George Drumheller, who had acquired the disputed property by conveyance from the Northern Pacific Railway Company, dated October 7, 1925. That evidence was introduced in the above entitled cause showing that Thomas J. Drumheller, Jr. and Thomas J. Drumheller, Sr. had paid all taxes levied against said property as the same became due annually from 1944 through the first half of the taxes for 1969.

■ A review of the record establishes that although some of the testimony was in dispute there was substantial testimony, if believed, to support the court's findings. The primary dispute arose from testimony of the plaintiff Thomas J. Drumheller, Jr. that he erected the fence around the springs and continued to graze sheep within the enclosed area during the period when defendants' predecessors in interest were found to be in exclusive possession. On the other hand, disinterested witnesses testified that Mr. McLeod erected the fence and sheep were not seen in the disputed area after 1921. This conflicting testimony raised the question of credibility. The trial court chose to believe defendants' witnesses and its findings will

not be disturbed. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Plaintiffs' assignment of error to finding of fact 9, *supra,* is based upon admission into evidence of documents concerned with an application to appropriate water from Rocky Ford Creek by the city of Ephrata in 1951. Mr. Drumheller, Sr., plaintiffs' immediate predecessor in interest, signed an affidavit of protest, which stated in part:

That the said Rocky Ford Creek has its source in a series of springs located on the West one-half of Section 16, . . .

The court admitted these documents into evidence as a declaration against interest. Plaintiffs objected on two grounds: first, no foundation was laid showing that plaintiffs' predecessor in interest had in mind the property dispute when he made the statement; and second, he was 78 years old and blind at the time, and did not have capacity to sign the statement.

■■ Admissions are the words or acts of a party opponent or his predecessor or representative offered as evidence against him. McCormick, Evidence § 239, 502 (1954). The rule is that declarations of a predecessor in interest to land are admissible as admissions against his successor. *Phinney v. Campbell,* 16 Wash. 203, 47 P. 502 (1896). In the present case, the statement signed by Mr. Drumheller, Sr. was an admission, not a declaration against interest. Admissions, unlike declarations against interest, do not have to be against interest when made. McCormick, Evidence, *supra.* Therefore, it was unnecessary for the defendants to establish that Drumheller, Sr. had this property dispute in mind when he made the statement.

As to the capacity of Mr. Drumheller, Sr. to make the statement, the following excerpt from 29 Am. Jur. 2d *Evidence* § 607 (1967) is pertinent:

An admission is received with caution where it appears that the person who made it was at the time in such a mental or physical condition as not to be able to exercise freedom of will.

In the present case it does not appear that the declarant was suffering under such a mental or physical condition as not to be able to exercise free will when making the statement. The fact that he was blind and aged would only go to the weight of the evidence. We find no error in admitting these documents. We also find substantial evidence to support all findings of fact entered by the trial court.

■ Plaintiffs next contend the facts as found by the trial court do not support its conclusion that the defendants established title by adverse possession. Plaintiffs argue that the erection of the fence was not an act sufficient to constitute claim of ownership. We disagree. In *Frolund v. Frankland*, 71 Wn.2d 812, 817, 431 P.2d 188 (1967) it was held:

> it is essential to bear in mind that what constitutes possession or occupancy of property for purposes of adverse possession necessarily depends to a great extent upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied. In this vein, we have accepted the view that the necessary occupancy and use of the property involved need only be of the character that a true owner would assert in view of its nature and location. *Skoog v. Seymour*, 29 Wn.2d 355, 187 P.2d 304; . . .

In the instant case the trial court carefully considered the unique nature and location of the disputed area, and the fact that it was an integral part of defendants' fish hatchery operation. Under these circumstances the trial court held that defendants "unfurled the flag" of hostile ownership when they erected the fence, thus enclosing the area used for the fish hatchery operation. The trial court held, and we agree, that the defendants have since, within the contemplation of the law of adverse possession, occupied the disputed area for more than the statutory period (10 years under RCW 4.16.020) actually and uninterruptedly, openly and notoriously, hostilely and exclusively, and under a claim of right made in good faith. *Bowden-Gazzam Co. v. Hogan*, 22 Wn.2d 27, 154 P.2d 285 (1944); *Taylor v. Talmadge*, 45 Wn.2d 144, 273 P.2d 506 (1954); *Booten v. Peterson*, 47 Wn.2d 565, 288 P.2d 1084 (1955).

■   Plaintiffs finally contend that even if defendants obtained title by adverse possession the plaintiffs reacquired it under RCW 7.28.080 by payment of taxes under color of title to vacant and unoccupied land. Plaintiffs contend that the fence was in a state of disrepair as of the late 1950s, and that they and their immediate predecessors in interest continued to pay taxes as assessed against the property; however, it is clear from the record that defendants' presence on the property was bolstered by improvements made by their tenant in 1954. Furthermore, there was substantial activity in the disputed area in connection with the hatchery. Therefore, the improvements, coupled with this activity, preclude the characterization of this property as "vacant and unoccupied" within the meaning of RCW 7.28.080.

Judgment affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied December 21, 1970.

Review denied by Supreme Court February 9, 1971.