646 P.2d 413

Lee JOLLEY and Marijane Jolley,
husband and wife,
Plaintiffs-Respondents,

v.

J. R. CLAY, individually and as Personal
Representative of the Estate of Dahlia
Clay, deceased, Defendant-Appellant.

No. 13433.

Supreme Court of Idaho.

May 3, 1982.

William A. Parsons of Parsons, Smith &
Stone, Burley, for defendant-appellant.

Herman E. Bedke, Burley, for plaintiffs-
respondents.

**172**

BISTLINE, Justice.

## I.

The pleadings of the parties to this action were superseded by a Pre-Trial Conference Order. The agreed facts included that Marijane Jolley, one of the plaintiffs, and J. R. Clay, the defendant, are the sole surviving children of Dahlia Clay, who at the time of her death owned the 20 acre parcel which was the subject of this law suit, and that J. R. Clay was the personal representative of Dahlia Clay's estate.[1] Plaintiffs' contentions were that they had entered into an oral contract with Dahlia Clay for the purchase of the 20 acre parcel for $10,000, and that they had paid thereon $5,500 and tendered to J. R. the $4,500 balance. Plaintiffs further contended that they had taken possession of the parcel pursuant to the oral agreement and made substantial improvements. J. R.'s contention, as pertinent to this appeal, was that the oral contract was invalid, "not having been reduced to writing pursuant to the requirements of Idaho Code § 9–503." Placed in issue, as recited in the pre-trial order, was the existence of the claimed oral contract, the partial payment of the purchase price, the taking of possession and the making of permanent and valuable improvements. The question placed before the trial court was whether equity and justice required the conveyance of the property to plaintiffs upon their paying the balance of $4,500, and whether the failure to reduce the contract to writing was a bar to plaintiffs' action.

In a one day trial the plaintiffs and two other witnesses testified. J. R. did not personally appear at the trial, and although subpoenaed by the plaintiffs during the noon recess, he had not yet appeared when plaintiffs rested their case. Upon plaintiffs' resting, J. R.'s counsel moved for an involuntary dismissal, which the court took under advisement and later denied. J. R.'s counsel stood on the motion, advising the court that he would not put on any case if

the motion were denied. In entering his written order denying the motion for involuntary dismissal, the trial court allowed both parties time in which to argue the merits by way of memoranda and, in keeping with this Court's suggestion in *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977), requested proposed Findings of Fact and Conclusions of Law from both parties, which request the parties complied with. Thereafter the district court prepared and entered its own Findings and Conclusions, which were favorable to the plaintiffs. As pertinent to the issues now presented to us those Findings are as follows:

"5. That in January, 1964, pursuant to an oral agreement or contract, Dahlia Clay sold the property in question to her daughter and son-in-law, Marijane Jolley and Lee Jolley, husband and wife, for the sum of $10,000.

"6. That the terms of such agreement are as follows: Pursuant to oral agreement Dahlia Clay sold the real property in question to her daughter and son-in-law, Marijane Jolley and Lee Jolley, husband and wife, for the sum of $10,000, payable without interest on an installment sale contract giving the purchasers immediate possession and with the purchasers paying the taxes, with payments to be made periodically, but with no exact payment schedule.

"7. That the $10,000.00 for the property was a fair price for the sale of the real property above described.

"8. That pursuant to the oral agreement, Marijane and Lee Jolley made the following payments to Dahlia Clay:

| | |
|---|---|
| April 4, 1965, paid by check | $ 500.00 |
| July 29, 1965, paid by check | 500.00 |
| December 30, 1966, paid by check | 1,000.00 · |
| May 16, 1968, paid by check | 450.00 |
| A check on the proceeds of the sale of a sleigh which the Jolleys had purchased was endorsed directly over to Dahlia Clay | 1,000.00 |

the estate, requiring J. R. as personal representative to accept tender and deliver a deed.

1. It was also agreed that J. R. was sole devisee and legatee named in Dahlia's will. The relief which was given by the trial court was against

Lee Jolley sold a horse named Bar Muff and this check was endorsed over to Dahlia Clay      $ 900.00

Cash given to Dahlia Clay at various times      1,150.00

TOTAL:      $5,500.00

"9. That prior to the conveyance of all the property from J. R. Clay to Dahlia Clay, the plaintiffs were in possession thereof as tenants, and after the major portion of the farm property was sold to Gaylord Phillips by Dahlia Clay and, pursuant to the above oral agreement, Marijane and Lee Jolley took possession of such property as owners and retained such possession continually for approximately 15 years and are still in possession of the premises in question.

"10. That Marijane and Lee Jolley, during this 15-year period, made the following valuable improvements on the property in reliance on the oral contract or agreement with Dahlia Clay: surveyed and fenced the land in conjunction with Gaylord Phillips; filed for and received a permit to drill a well on the premises; drilled a well and installed a pump; remodeled the barn from a milking parlor to a horse barn and built corrals to accommodate horses; put a new roof on the house; carpeted the house throughout; and remodeled the kitchen and bathroom.

"11. That the approximate value of these improvements was $10,000.00.

"12. That in further reliance on the oral agreement, the Jolleys paid the ad valorem taxes of Cassia County from 1964 to 1975 and tendered payment to Cassia County since the death of Dahlia Clay.

"13. That Dahlia Clay died on September 9, 1976, in Cassia County, Idaho, and at the time of her death she had not conveyed the real property in question to the Jolleys.

"14. That J. R. Clay was appointed personal representative of the Estate of Dahlia Clay. He refused to accept the tender of the balance of the purchase price of $4,500.00, and although demanded by the plaintiffs, refused to convey the real property to them as per the oral contract between Dahlia Clay and the Jolleys."

The Court's Conclusions of Law were:

"1. That the defendant is precluded from now interposing the statute of frauds as a defense, the defendant having allowed plaintiffs to rely on the oral sale to their detriment for some 15 years.

"2. That the occupancy of the land in question, the improvements by the plaintiffs, the payments to Dahlia Clay, the obtaining of a well permit, the obtaining of fire insurance, and the payment of taxes on the real property are all consistent with ownership of the land in question and in reliance on the oral contract of sale between the plaintiffs and Dahlia Clay.

"3. That the plaintiffs have met their burden of proof in proving that an oral contract existed between them and Dahlia Clay and in proving the material terms of such contract. That the proof has shown that the plaintiffs and Dahlia Clay understood the terms of their contract and that their minds met with respect thereto. That such parol contract has been proved sufficiently definite, certain, and complete in its material terms by the plaintiffs. That the Doctrine of Part Performance is applicable herein. This Court will thus exercise its equity jurisdiction by specifically decreeing specific performance of this oral contract.

"4. That the estate of Dahlia Clay, in fairness and in equity, will be required to specifically perform the contract to sell the land in question by accepting from the plaintiffs the unpaid balance of $4,500.00 and by then executing and delivering to the plaintiffs a deed on the real property in question conveying the same to the plaintiffs in fee simple."[2]

---

**2.** Following J. R.'s motion to alter or amend the Findings and Conclusions, the Conclusions of Law were amended so as to rewrite no. 1 to read as follows:

"1. That the defendant is precluded from now interposing the statute of frauds as a defense, *Dahlia Clay* having allowed the plaintiffs to rely on the oral sale to their

Pertinent to our understanding of the theories of the parties, and consistent with J. R.'s non-appearance at trial against the estate of which he was personal representative and sole devisee as well, it is seen from his proposed findings and conclusions that he simply did not believe that Marijane and her husband could make out a case on the facts and the law. J. R. proposed a finding that Marijane and Lee's occupancy was that of tenants when they took possession in 1960; that Dahlia "may have had an intent to sell" the parcel in question, but that that intent was not reduced to writing, and that the conversations which formed the basis for the alleged contract were insufficient "to show an oral contract, complete, definite, and certain in all material terms." Another proposed finding was that the improvements made by Marijane and Lee were for their benefit or in the nature of good husbandry, and "not in reliance on any contract."

J. R.'s proposed conclusions were to the effect that the evidence did not establish an oral agreement, and for that reason the doctrine of part performance was not applicable. These contentions are continued on appeal, as is a contention made at trial that the testimony of the two independent witnesses, Mr. Phillips and Mrs. Bailey, violated the hearsay rule and was inadmissible. We turn to this contention at the outset, as J. R. is correct in labeling that testimony as essential to plaintiffs' case.

## II.

Mr. Phillips and Mrs. Bailey testified as to what Dahlia Clay had said to them concerning the sale and purchase of the 20 acre parcel. J. R. argues that this testimony was the only proof that there was a sale and that it was for the price of $10,000. He urges upon us that absent such evidence, no case for specific performance was proven.

Mr. Phillips had purchased a ranch from Dahlia Clay in 1963, which property appears

to have at one time encompassed the subject 20 acres. He was asked to state what was said at that time, and J. R.'s counsel interposed that:

"We object, Your Honor, on the basis that the conversation's hearsay and to any terms and conditions of the purchase that Mr. Phillips entered into, is irrelevant and immaterial. I think, clearly, he has testified that Mr. J. R. Clay was not present. Only present were Mrs. Clay's mother and Mrs. Clay and Gaylord Phillips, and to that extent, it is clearly hearsay, and his part is irrelevant."

There was considerable argument on the objection, during which the court stated its understanding of plaintiffs' contention that Mr. Phillips' testimony would not be objectionable as hearsay because J. R. Clay "stands in the stead of Dahlia Clay." The plaintiffs replied that the court correctly so understood, adding that J. R.'s "only reason for being (made) a party to this lawsuit is that he is the personal representative, and he is in privity with the original party [his decedent testatrix, Dahlia Clay]."

Mrs. Bailey was a 46 year neighbor of Dahlia Clay's, and they were good friends. When she was asked to state the facts of a conversation about the sale in question which she had had with Dahlia Clay in 1963, the objection made by defense counsel was that "[s]he was testifying as to conversations between herself and Dahlia, out of the presence of the party defendant, and it constitutes hearsay."

During the ensuing argument on the objection, defense counsel again repeated the basis of his objection: "that the conversation between Mrs. Bailey and Mrs. Clay constitutes hearsay, as *to the defendant, J. R. Clay* . . . ." (Emphasis added.) No distinction was drawn by defense counsel between defendant, J. R. Clay, individually, and defendant, J. R. Clay, in his representative capacity as personal representative of the Estate of Dahlia Clay. As pointed out,

detriment for some 15 years." (Emphasis added.)

As will be noted, the slight change is to the effect that it was not J. R. but his mother,

Dahlia, who allowed the plaintiffs to rely on the oral sale.

relief given in the judgment was against the estate, and not against J. R. Clay, individually. The trial court admitted the testimony of Mrs. Bailey and Mr. Phillips, basing its ruling upon authority cited by plaintiffs, and we believe was entirely correct in so doing, as shall be pointed out.

Although J. R. relied heavily on certain statements in *Quayle v. Mackert*, 92 Idaho 563, 447 P.2d 679 (1968), the court below correctly perceived that the opinion in that case did not contain any holding on the hearsay rule, no objection having been made to preserve the question for appeal.

We are persuaded by the same authority which influenced the trial court to allow the independent testimony of Dahlia Clay's statements relative to the sale of the 20 acre parcel to her daughter and son-in-law. Clearly, in an action brought by these plaintiffs against Dahlia Clay in her lifetime, statements made by her and witnessed by third persons would have been admissible when those witnesses were called to testify.

 " 'The statements made out of court by a party-opponent are universally deemed admissible, when offered against him.

 \* \* \* \* \* \*

 " ' \* \* \* they do pass the gauntlet [of the Hearsay rule] when they are offered *against* him as opponent, because he himself is in that case the only one to invoke the Hearsay rule and because he *does not need to cross-examine himself.*

 \* \* \* \* \* \*

 " 'The Hearsay rule, therefore, is not a ground of objection when an opponent's assertions are offered *against* him; in such case, his assertions are deemed Admissions.

 \* \* \* \* \* \*

 " ' \* \* \* all admissions, used against the opponent, satisfy the Hearsay rule and, when once in, have such testimonial value as belongs to any testimonial assertion under the circumstances; and the more notably they run counter to the natural bias or interest of the party *when made,* the more credible they become; this element adding to their probative value, but

not being essential to their admissibility.' " *Corey v. Wilson*, 93 Idaho 54, 57, 454 P.2d 951, 954 (1969) (quoting J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law).

This Court has always recognized that the out-of-court statements of parties to litigation are admissible in evidence against that party, so long as they are relevant to the substantive issues being tried, although the reasons given for admissibility have not always been consistent. For example, this Court stated in *Jephson v. Ambuel,* 93 Idaho 790, 793, 473 P.2d 932, 935 (1970), that out-of-court statements of a party opponent are "admissible at trial to establish facts relevant to substantive issues under the admissions of a party opponent exception to the hearsay rule." In *Curtis v. Curtis,* 58 Idaho 76, 80, 70 P.2d 369, 370 (1937), however, the Court stated flatly that "[t]his [out-of-court] conversation between appellant and her son *was not hearsay.* It was a statement made by appellant to her son and made in the presence of and within the hearing of the witness . . . ." (Emphasis added.)

The out-of-court statements of parties to litigation are, and always have been, admissible, whether classified as non-hearsay or as an exception to the hearsay rule. We believe that the better approach is to simply classify those statements as non-hearsay. This approach has been adopted in the federal rules of evidence. Fed.R. Evid. § 801(d)(2). The reason for classifying these types of statements as non-hearsay is that "their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Advisory Committee's Note to Federal Rule of Evidence, 801(d)(2), 11 Moore's Federal Practice VIII–42 (2d ed. 1976) and cumulative supplement; *United States v. Rios Ruiz,* 579 F.2d 670 (1st Cir. 1978). *See Silver Syndicate, Inc. v. Sunshine Mining Co.,* 101 Idaho 226, 236, 611 P.2d 1011, 1021 (1979); *Carey v. Wilson, supra.* We reaffirm the holding in *Curtis, supra,* that out-of-court statements by parties to litigation are not hearsay.

■ It is at once obvious that although Dahlia Clay is not a party to the instant action, her estate very much is. It is a well recognized rule that admissions by a predecessor in interest are admissible in an action against a successor in interest when there is privity between the two. *See Matusick v. Large*, 85 Nev. 202, 452 P.2d 457 (1969); *Katnig v. Johnson*, 383 P.2d 195 (Okla.1963); *Drumheller v. Nasburg*, 3 Wash.App. 519, 475 P.2d 908 (1970); McCormick on Evidence § 268 (2d ed. 1972). *See also Silver Syndicate, supra.*[3]

" 'A statement of a decedent, which was a declaration or admission against his interest and which would have been admissible if offered against him, is admissible against his executor or administrator or other person claiming under him. Admissions of a deceased owner of personal property in disparagement of his title, to whomsoever made, are competent against his personal representatives and next of kin or legatees. * * *.' " *Livingston v. Bonham*, 308 P.2d 657, 661 (Okl.1957) (quoting 31 C.J.S., Evidence § 334 at 1108–09 (1938)).

■ The trial court in this case found that there was privity between Dahlia Clay and J. R. Clay as the personal representative of Dahlia Clay's estate, and based its admission of the witnesses' testimony regarding Dahlia Clay's statements on that fact. We find no error in admission of this evidence.

### III.

The remaining issues are whether an oral contract to convey the property was proven and, if so, whether part performance sufficient to take the contract out of the statute of frauds was proven.

■ Both parties agree that "[t]he law requires as a condition to specific performance that the contract be proved by clear and convincing evidence," *Anderson v. Whipple*, 71 Idaho 112, 123, 227 P.2d 351, 358 (1951), and that "the contract must be 'complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty.' " *Id.* The question of whether the evidence *is* clear and convincing, however, is to be determined in the first instance by the trial court, and if there is substantial and competent evidence to support the trial court's findings, even though the evidence may be conflicting, we will not disturb the court's findings on appeal. *Jones v. Adams*, 67 Idaho 402, 405, 182 P.2d 963, 967 (1947).

■ The trial court here specifically found that an oral contract which was complete, definite and certain in all of its material terms was formed between Dahlia Clay and the Jolleys. We have reviewed the record, including the testimony of Mr. Phillips and Mrs. Bailey, and we conclude that the evidence supports the trial court's findings. *See Hoffman v. S. V. Company*, 102 Idaho 187, 628 P.2d 218 (1981).

As to whether there was sufficient part performance of the oral contract to convey the real property to take the agreement out of the statute of frauds, I.C. § 9–503 provides:

"Transfers of real property to be in writing.—No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

I.C. § 9–504, however, provides:

---

**3.** In *Silver Syndicate* the statements admitted were those of an *agent* for one of the parties, which agent had since become deceased. The party against whom the statement was admitted was still in corporate existence. We note the case to stress that it is not the availability (or lack thereof) of a declarant for cross-examination which determines the admissibility of a vicarious admission, but rather the interest of the declarant and the relationship between the declarant and the party against whom the evidence is admitted.

"Exceptions to preceding section.—The preceding section must not be construed to affect the power of a testator in the disposition of his real property by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law, nor to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof."

Thus, so long as partial performance has occurred under the contract, the trial court had the discretion to compel specific performance, despite the lack of written evidence of the parties' agreement.

In this case, the evidence shows, and the trial court found, that the Jolleys took possession of the property and lived upon it *as owners* for fifteen years; that the Jolleys made improvements upon the property valued at $10,000, or roughly the amount of the purchase price, that the Jolleys paid the taxes on the property from 1964 to 1975, and that the Jolleys paid $5,500 of the $10,000 purchase price. This unquestionably constitutes part performance sufficient to take the contract out of the statute of frauds.[4] "[S]atisfaction of the doctrine of part performance [will] entitle [performing parties] to specific performance." *Hoffman, supra,* 102 Idaho at 222, 628 P.2d at 222. *See Tew v. Manwaring,* 94 Idaho 50, 480 P.2d 896 (1971).

The judgment of the district court awarding specific performance to the Jolleys is

*Affirmed.* Costs to respondents.

**4.** Appellant also raises in his brief on appeal the argument that the contract violates the statute of frauds because it cannot be performed in less than a year. We understand this argument to be based on I.C. § 9–505(1). I.C. § 9–505(1) provides:

"Certain agreements to be in writing.—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

"1. An agreement that by its terms is not to be performed within a year from the making thereof."

McFADDEN and DONALDSON, JJ., concur.

BAKES, C. J., and SHEPARD, J., concur in the result.

The contract must "by its terms" be incapable of performance within a year before it is barred by the statute. In this case there is no evidence of an affirmative contract clause that would render performance within a year impossible. *See* 72 Am.Jur.2d *Statute of Frauds* § 7 at 571 (2d ed. 1972) ("that a contract cannot be performed within a year means not a natural or physical impossibility, but an impossibility by the terms of the contract itself, or by the understanding and intention of the parties as shown by the contract."). Thus the statute is inapplicable and we need not address the effect of part performance on the statute.