[No. 34436.　Department Two.　June 29, 1961.]

RICHARD V. STOCKWELL *et al., Appellants*, v. L. E. GIBBONS *et al., Respondents and Cross-appellants.**

*George E. McIntosh, Paul M. Stocker, John N. Leavitt,* and *Eugene C. Anderson,* for appellants.

*Abbott, Lant & Fleeson, Skeel, McKelvy, Henke, Evenson & Uhlmann,* and *Michael Mines,* for respondents.

FINLEY, C. J.—In this action the plaintiffs Kacks and Stockwells and defendants Gibbons, by complaint and cross-

*Reported in 363 P. (2d) 111.

complaint, respectively, seek to quiet title to certain relatively small portions of Government Lot 1, Section 32, Township 35, North, Range 2, East W. M.

A map showing Government Lot 1 and the adjacent tidelands is reproduced hereinafter.

Government Lot 1, commonly known as Weaverling's Spit, is a peninsula of Fidalgo Island, located in the vicinity of Anacortes, Washington. A quick reference to the map shows that Lot 1 is bounded on the west by the section line common to sections 31 and 32. On the north, east and south, it is bounded by State Tideland Tract 18 and the waters of Fidalgo Bay, an arm of Puget Sound. Generally speaking, the ownership interests of the Kacks and Stockwells involve the western portion of Lot 1, and the interests of the Gibbons the eastern portion.

The controversy between the parties in this case is twofold, in that it involves two distinct and different questions. The first involves title to a strip of land approximately fifty-five feet wide (see area marked ABCD on map); the second involves title to property known as the meander strip (see irregular, noncontiguous, dark-shaded portions of property along the shore of Lot 1). The trial court found that the disputed fifty-five-foot strip was owned by the Gibbons; that the meander strip fronting on the eastern end of Lot 1 was owned by the Gibbons by reason of adverse possession; that the remainder of the meander strip was owned by the Kacks and the Stockwells; and that the Gibbons possessed littoral and riparian rights in the entire meander strip. All parties appeal.

The common grantor of all parties litigant acquired title to Lot 1 from a government land patent issued in 1862, some twenty-seven years prior to the admission of the state of Washington to the Union. Under Article 17, § 2, of the Washington State Constitution, such a land patent conveys to the patentee title to all of the property above the line of ordinary high tide or the government meander line, *whichever is farther seaward. Van Siclen v. Muir* (1907), 46 Wash. 38, 89 Pac. 188; *Kneeland v. Korter* (1905),

40 Wash. 359, 82 Pac. 608, and cases cited. See, also, 23 Wash. L. Rev. 235, 240 (1948). Reference to the map of Lot 1 shows that the meander line is seaward of the line of ordinary high tide along nearly the entire north and east shores of the spit and at several places along the south shore. Since it is necessary in this case to distinguish between the property lying above the line of ordinary high tide and the property lying between the line of ordinary high tide and the meander line, when the meander line is seaward of the line of ordinary high tide, we will hereinafter, for the sake of convenience, refer to the former as the "uplands" and the latter as the "meanderstrip."

The parties derive their interests in Lot 1 by mesne conveyances dating back to the aforementioned land patent of 1862. The following table lists these conveyances and permits them to be readily visualized and traced:

| DATE | GRANTOR | GRANTEE | PROPERTY CONVEYED |
|------|---------|---------|-------------------|
| 1862 | U. S. Government | James Weaverling | Government Lot 1 |
| 1887 | James Weaverling | Charles Weaverling | Government Lot 1 |
| 1889 | Charles Weaverling | Amos Bowman | Eastern Uplands |
| 1891 | Charles Weaverling | Amos Bowman | Littoral and Riparian rights in meanderstrip and right to purchase Tide Land Tract 18. |
| 1893 | Amos Bowman | Allen Curtis | Eastern Uplands |
| 1907 | Bowman and Curtis | Fidalgo Bay Land Co. | Right to purchase Tide Land Tract 18. |
| 1916 | Allen Curtis | Fidalgo Bay Land Co. | Eastern Uplands |
| 1917 | State of Washington | Fidalgo Bay Land Co. | Tide Land Tract 18 |
| 1937 | Charles Weaverling | Marie Kack (Appellant) | Government Lot 1, except Eastern Uplands. |
| 1942 | Fidalgo Bay Land Co. | Young and Schneider | Eastern Uplands and Tide Land Tract 18. |
| 1947 | Young and Schneider | L. E. Gibbons | Eastern Uplands and Tide Land Tract 18. |
| 1954 | Marie Kack | Richard Stockwell | Contract to purchase Government Lot 1, except Eastern Uplands. |

We will first discuss the question concerning ownership of the fifty-five-foot strip lying along the dividing line be-

tween the eastern uplands and the remainder of Lot 1. As shown by the above table of conveyances, Government Lot 1 was first divided by the 1889 conveyance from Charles Weaverling to Amos Bowman. The dividing line was described in that deed as commencing at a point "at high water mark" on the north shore of the spit a distance of 650½ feet from the section corner common to sections 29, 30, 31, and 32. Therefore, the exact location of this line is completely dependent upon finding the exact location of the section corner.

At the trial the evidence relating to the location of this corner was conflicting. A monument alleged to be the true section corner was located, but, according to the testimony of several of the witnesses, it had been moved from its original location. Although the witnesses agreed that the monument was not in its proper place, they were unable to agree as to where it had originally been placed. The only expert witness to testify at the trial, a surveyor named Frank Gilkey, testified that the monument was properly located. The trial court believed that the survey of witness Gilkey was accurate and accepted the monument as described and located by him as the true section corner. Since this finding of the trial court is supported by substantial evidence, its truth and accuracy will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183.

Locating the section corner at the monument, as indicated above, establishes the beginning of the dividing line to be approximately fifty-five feet west of an old fence (line BD on map), now largely in disrepair, which was built at some unknown time in the past and is referred to throughout the trial by all parties as the "old line fence." The trial court's holding that the "old line fence" was not the true boundary dividing the two pieces of property has the effect of granting to the Gibbons title to the disputed fifty-five-foot strip. The Kacks and Stockwells, however, claimed that they had established title to the disputed strip both by adverse possession and by acquiescence and recog-

nition. The trial court refused to consider these contentions on the basis of the general rule that a grantor remaining in possession after a conveyance will be presumed to hold in subservience to the grantee. *Spaulding v. Collins* (1909), 51 Wash. 488, 99 Pac. 306. We are in accord with the general rule, but we do not believe that it is applicable to the instant case. In a line of cases discussed at 39 A. L. R. 353, 374, an exception to the general rule is discussed. This exception applies in those cases in which the grantor gives up possession of the major part of the property conveyed but remains in possession of a portion of it under the mistaken belief that it was not conveyed. Under such facts there is no validity to the assumption, upon which the general rule is based, that the grantor remains in possession permissively under the grantee.

We believe that the trial court erred in applying the general rule. Therefore, this portion of the judgment will be reversed and remanded so that the trial court can consider the appellants' allegations of adverse possession and acquiescence and recognition. In passing, we point out that the recent case of *Wood v. Nelson* (1961), 57 Wn. (2d) 539, 358 P. (2) 312, decided after the instant case was tried, considered a somewhat similar factual situation involving a line fence. We believe that this case should be considered by the trial court upon remand.

We next come to the question of ownership of the "meanderstrips." As pointed out above (dark portions of map), Lot 1 was first divided by the 1889 conveyance from Charles Weaverling to Amos Bowman. The description contained in that deed is as follows:

"Commencing at a point at high water mark on the North shore or beach of . . . Weaverling's spit which is distant six hundred and fifty and one half (650½) ft., South seventy six degrees thirty-eight minutes (76°38') East from the section corner common to Sections 29, 30, 31 and 32, Township 35, North Range 2, East in Skagit County, Washington, and running thence S. 16°05' West 482 feet to high water mark on the South shore of said Spit, thence easterly, northerly and westerly following high water mark to the point of beginning. Comprising that

portion of Lot One, Section 32, Township 35 North, Range 2, East which lies eastward from the line described as commencing at the point of commencement and running S 16°5′ W 482 ft., and containing seven acres, more or less, . . ."

■ The first part of the foregoing conveyance describes with particularity that part of Lot 1 lying east of the dividing line and above the line of ordinary high tide. The description does *not* include that portion of the meanderstrip lying east of the dividing line. The second part seems to indicate, in more general language, that *all* of the property east of the dividing line, including the meanderstrip, was intended to be conveyed. The rule to be applied in such cases is stated at 72 A. L. R. 410 as follows:

"Where a particular and a general description in a deed conflict, and are repugnant to each other, the particular will prevail unless the intent of the parties is otherwise manifested on the face of the instrument." *Cf. Booten v. Peterson* (1949), 34 Wn. (2d) 563, 209 P. (2d) 349.

There is nothing on the face of this deed of conveyance which would take it out of the general rule. The deed contains nothing more than a specific description followed by a repugnant general description, and the wording is such as to show no intent that the general description should prevail. We believe that the trial court properly interpreted this deed as conveying only the eastern uplands, not the meanderstrip, to the predecessors of the Gibbons.

This conclusion is further strengthened by the 1891 deed from Charles Weaverling to Bowman, which provided:

"This witnesses that we have conveyed to Amos Bowman the whole of our Riparian or Littoral rights appertaining & attaching to Lot one Section Thirty two, Township (35) Thirty five North, Range Two (2) East W.M. for the consideration of one Dollar the receipt of which is hereby acknowledged. In addition to the title conveyed in 1889 in our deed conveying Weaverlings Spit to Bowman we now convey the balance of the tide lands fronting in Lot one not then conveyed: namely westward of the foregoing & extending to the western extremity of Lot one aforesaid."

This conveyance of littoral and riparian rights is consistent with the trial court's conclusion that the 1889 deed did not convey to Bowman any more than the eastern uplands. Had the 1889 deed conveyed the meanderstrip to Bowman, there would have been no reason for the 1891 deed, because Bowman would already have owned the littoral and riparian rights which Charles Weaverling attempted to convey.[1] If Charles Weaverling kept the meanderstrip, however, then the 1891 conveyance of littoral and riparian rights makes sense, because without such rights Bowman would be cut off from the water by the narrow meanderstrip fronting on almost the entire length of his property.

The respondents next contend that the second part of the 1891 deed conveyed to Bowman the entire meanderstrip. We do not agree. It is abundantly clear from the record that Charles Weaverling never owned any tide lands in connection with Lot 1. Under Article 17, § 1, of the Washington State Constitution, all tide lands not patented to private ownership prior to statehood vested in the State. As we have already seen, the Weaverling patent conveyed title only to the line of ordinary high tide or the meander line. It is not reasonable to assume that Charles Weaverling intended to convey the meanderstrip by the second part of the 1891 deed. Had this been his intention, no purpose would be served by the grant of littoral and riparian rights in the first part of the deed. A grant to Bowman of fee title to the meanderstrip would include these rights and would make the first part of the conveyance pointless.

Considering the conveyance in the light of the law as it existed at that time, there can be only one reasonable interpretation of the second part of the 1891 deed. As the trial court found, Charles Weaverling simply intended to convey to Bowman the right to acquire the adjacent tidelands. In the session of 1889-90, the state legislature granted to

---

[1]The record shows that Charles Weaverling had worked for the Coast and Geodetic Survey and, therefore, should have been familiar with such terms as riparian, littoral, meander line, line of ordinary high tide, tidelands, etc.

the owners of abutting uplands a preferential right to purchase the tidelands lying in front of their uplands. Chapter XIV, Laws of 1889-90, p. 435, Tide and Shore-Lands, § 11. See RCW 79.01.448. In *Bleakley v. Lake Washington Mill Co.* (1911), 65 Wash. 215, 118 Pac. 5, we held that, for the purpose of considering who had the preferential right to purchase the tidelands, property similar to the meanderstrip here in question would be treated as uplands. Keeping this in mind, it becomes clear that the only reasonable interpretation of the second part of the 1891 deed is that Bowman received the right to purchase the tidelands adjacent to the entirety of Lot 1 (designated Tide Land Tract 18 by the State). Bowman and Curtis then assigned this right to purchase the tidelands to Fidalgo Bay Land Co., which exercised it in 1917 by buying the tidelands from the State.

Since Charles Weaverling conveyed to Bowman only that part of the eastern portion of Lot 1 lying above the line of ordinary high tide, he retained title to the meanderstrip and later conveyed it to appellant Marie Kack in the 1954 deed which gave her the whole of Lot 1, excepting the eastern uplands described substantially the same as in the 1889 deed. It is the contention of the Gibbons that even if this be true they, nevertheless, have established title to the *whole* of the meanderstrip by adverse possession. The Kacks and Stockwells, on the other hand, assign as error the finding of the trial court that the respondents have title by adverse possession to *any* of the meanderstrip. The trial court, after viewing the premises and listening to a great deal of testimony, found that the Gibbons had established title by adverse possession to that portion of the meanderstrip fronting upon the eastern portion of the uplands. Without setting forth the conflicting evidence in detail, suffice it to say that the decision of the trial court is supported by substantial evidence and will, therefore, stand. *Thorndike v. Hesperian Orchards, supra.*

The cause is remanded to the trial court for further proceedings in accord with the views expressed in this opinion.

The parties shall bear equally the costs of appeal, except that each party shall bear the cost of printing his own brief.

HILL, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

September 5, 1961. Petition for rehearing denied.