[No. 291-41493-2.    Division Two.    February 4, 1971.]

WALTER I. POWELL et al., *Respondents*, v. ROBERT M. SCHULTZ, JR. et al., *Appellants*.

*Glenn E. Correa,* for appellants.

*Clay Nixon,* for respondents.

PEARSON, J.—Respondents, Walter I. Powell and wife, sought by this action to establish the boundary of their uplands and tidelands with their neighbors to the south, namely the appellants, Robert M. Schultz, Jr. and wife.

Resolution of these boundaries in respondents' favor has occasioned this appeal.

Once again the court is faced with a problem arising out of the use of a stream as a boundary line. In 1910, one Syvert Aardal and his wife, Martha, were owners of lot 3, section 13, township 24 north, range 3 west, an area on the shores of Hood Canal in Mason County, Washington. By a deed of July 7, 1910, the Aardals conveyed approximately the southern one-half of lot 3 to John Erickstad, "making the Creek running through said Lot three the dividing line, . . .". Unfortunately for all concerned, there are two streams running on lot 3, a so-called North Creek and a South or Rocky Creek. The land conveyed to Erickstad eventually passed to the defendant, Schultz, and the land Aardal retained eventually came into the ownership of plaintiff, Powell. A dispute over which of the streams, in fact, was the intended boundary resulted in the case now before us.

Defendants sought to show that at the time of the deed the North Creek was the only creek in existence and that an avulsion had occurred subsequent to 1910 which had caused a diversion of the creek to the course referred to as Rocky Creek. On the other hand, plaintiffs offered testimony to show that the avulsion had occurred prior to 1910. Plaintiff's testimony also demonstrated that placing the boundary at Rocky Creek would more nearly give each party approximately half of government lot 3 (which both deeds recited).

In addition to this dispute, another problem between these parties revolves about ownership of second class tidelands adjacent to the disputed upland.

After a lengthy trial, at which much conflicting evidence was adduced, the trial judge determined that Rocky Creek or South Creek was the intended boundary. This determination was supported by substantial evidence and so we will not overturn it on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Thus, the center line of Rocky Creek is the bound-

ary between the parties' lands, since where a stream is a boundary, the division follows the thread of this nonnavigable waterway. *Glenn v. Wagner,* 199 Wash. 160, 90 P.2d 734 (1939). We note, however, that when the trial court entered its findings of fact and judgment, it followed one of the surveys introduced into evidence in the case. The stations that serve as the reference points for the calls in the description of the boundary arrived at by this survey are located, in the main, 8 feet to the south of the southern edge of the waterway. This is not the line the trial court announced in its oral decision that it intended to use, and this line finds no support in any of the deeds to the disputed lands. Indeed, we can find no reason for the surveyor to place the line 8 feet south of the stream, except perhaps because of confusion arising out of an abandoned easement mentioned in some of the deeds. Thus, we will remand this portion of the judgment to the trial court, so that it may correct its findings and decree to reflect a correct boundary. This line ought to be so described as to follow the center line of Rocky Creek as nearly as possible. Courses which do deviate from the center line ought to be balanced with compensating areas, so that the net effect will be one of providing a line which, to as great a degree as possible, reflects the natural windings of Rocky Creek. It appears to us possible that this correction may be made by, in most cases, maintaining the same courses while moving the stations from their present location to one in the middle of the stream bed. Except for this correction, the determination of the upland boundary will be affirmed.

▮▮ Defendant Schultz has also assigned as error a procedural matter involving the trial court's allowing plaintiff to reopen and present additional testimony after both parties had rested, and after the court had rendered an oral decision in defendant's favor. Later, after both parties had rested again, the court on its own motion, ordered a new trial. In the first of these instances, plaintiff had obtained a different attorney and the trial court did not believe the issues raised had been fairly tried. When the

court, on its own motion, ordered a new trial, the trial judge indicated that he was confused by the state of the evidence. It is our view that the trial court had the inherent discretion, both to allow plaintiff to reopen and to award a new trial on its own motion. *See* Cr 59 (g). We do not find an abuse of discretion.

The tidelands dispute centers around an apparent conflict in conveyances made by a common grantor. For a time prior to 1933, H. W. and Martha White were owners of all of the tidelands involved in this controversy and situated in front of government lot 3. By a deed dated September 1, 1933, they conveyed to Walter I. Powell:

> All tide lands owned by H. W. White in front of that part of Lot three (3), Section thirteen (13), Township twenty-four (24), North, Range 3, W.W.M., which stands in the name of S. W. Powell, and beginning at a point about three hundred feet south of the meander corner between Lots two (2) and three (3) in said Section thirteen (13), said beginning point also being on the meander line and thence running southwesterly approximately three hundred feet to the south line of that portion of lot three owned by S. W. Powell and now of record in the office of the Auditor of Mason County, Washington.

Several years later, the Whites conveyed to the Thomases, who in turn, on September 29, 1951, conveyed to the Schultzes other tidelands lying in front of government lot 3. After particularly describing the tidelands to be conveyed, the grantors excepted lands earlier conveyed by the Whites to Powell.[1]

---

[1] The conveyance reads:

"(3) ALSO, all tide lands of the second-class, as conveyed by the State of Washington, situate in front of, adjacent to or abutting upon that portion of the Government meander line described as follows:

"Beginning at the point of intersection of the line between Government Lots 3 and 4, Section 13, Township 24 North, Range 3 West, W.M., with the Government meander line, and running thence North 29° East 11.80 chains; North 55° East 6.00 chains to the terminal point of this description, with a frontage of 17.80 lineal chains, more or less, measured along the meander line in front of a part of Government Lot 3, Section 13, Township 24 North, Range 3 West, W.M., according to a certified copy of the Government field notes of the survey thereof on

It seems rather clear that from the somewhat vague description in the White-Powell deed that White did not intend to convey substantially more than 300 feet of tidelands. This is borne out by Mr. Powell, who testified that he had been present when the Whites drew up the tidelands deed upon which he bases his title. Though there was no survey undertaken at the time of the deed, Mr. Powell testified that he believed he owned approximately 300 feet of tidelands, since he owned but one-half of the tidelands standing before his uplands, which totaled about 600 feet of frontage. The trial court decision left Powell with in excess of 500 feet of tidelands, including part of the tidelands included in a survey of the description in Schultz's deed.

■ To resolve this difficulty, we turn to rules of construction to aid us in determining what was intended by

file in the office of the Commissioner of Public Lands at Olympia, Washington.

"(4) ALSO, all tide lands of the second-class, as conveyed by the State of Washington, lying between the line of mean low tide and the line of extreme low tide and in front of that part of Government Lot 3, Section 13, Township 24 North, Range 3 West, W.M., measured along the meander line as follows:

"Beginning at the meander corner to fractional Sections 13 and 24, Township 24 North, Range 3 West, W.M., and running North 2° West 1.80 chains; North 28° West 6.00 chains; North 3° East 11.00 chains; North 29° East 14.00 chains; North 55° East 6.00 chains to the true point of beginning of this description; thence running South 55° West 6.00 chains and South 29° West 11.80 chains, more or less, to the intersection of the lot line between Government Lots 3 and 4, said Section, 13, with the Government meander line, and having a frontage of 17.80 chains, more or less.

"EXCEPTING from the above descriptions numbered (3) and (4), all that portion thereof conveyed by H. W. White and Martha E. White, husband and wife, to Walter I. Powell by deed dated September 1, 1933, recorded April 25, 1934, in Volume 59 of Deeds, page 630, under Auditor's File No. 72767, described therein as follows:

"All tide lands owned by H. W. White in front of that part of Lot 3, Section 13, Township 24 North, Range 3 West, W.M., which stands in the name of S. W. Powell and beginning at a point about 300 feet South of the Meander corner between Lots 2 and 3, said Section 13, said beginning point also being on the meander line, and thence running Southwesterly approximately 300 feet to the South line of that portion of Lot 3 owned by S. W. Powell and now of record in the office of the Auditor for Mason County, Washington."

the White-Schultz instrument. This deed contained both the language conveying tidelands owned by White to Schultz, and an exception of lands earlier conveyed by White to Powell. The White-Powell deed purports to convey land that is at best ambiguously described. About 300 feet of tidelands in front of upland owned by Powell purportedly passed. Exact courses and distances are not provided by the White-Powell description, but are provided by the White-Schultz description. *See generally,* RCW 79.01.480. In such a case, if a contract were involved, the court would look to the course of conduct of the parties in an attempt to derive the intent of the parties from evidence of the context in which the words were used. *Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920 (1970). A similar rule is followed in the case of ambiguous deeds. *Maxwell v. Harper,* 51 Wash. 351, 98 P. 756 (1909). Since we will not assume White conveyed the same tidelands twice, construction of the White-Schultz deed ought to yield White's true intent in both conveyances.

■  As a general matter, where a specific and a general description in a deed conflict and are repugnant to each other, the particular will control, absent intent of the parties otherwise manifested on the face of the instrument. *Stockwell v. Gibbons,* 58 Wn.2d 391, 363 P.2d 111 (1961). Here testimony of the surveyor indicated that the metes and bounds description in the grant to Schultz reached almost exactly to the North Creek, so that the use of the South Creek by the trial court as the upland boundary and the course of which the trial court apparently generally used as its tidelands boundary, would make the *general* description effective instead of the specific one. Since the North Creek boundary both gives effect to the particular description and also leaves Powell with only slightly more than the 300 feet of tidelands frontage he claimed to own, and which his deed said he would receive, we think that the trial court's tidelands boundary decision is not supported by substantial evidence, nor is it consonant with announced rules of construction. Therefore, the decree

should be modified to provide that the tidelands boundary will conform to the Schultz grant. Thus, we modify the decree to indicate that the tidelands boundary should be 17.80 lineal chains from the government lot line between lots 3 and 4 of section 13 as more particularly described in note 1, above.

Judgment is affirmed in part, reversed in part, and remanded for correction of the findings and decree. A decree should be entered which conforms to this decision. Appellant is awarded costs on appeal.

We note that the trial judge who decided this case, the Honorable Charles Wright, is now a justice of the Supreme Court, and consequently unable to preside over the modifications required by our opinion. Since those modifications are mechanical and do not involve any new fact finding, we remand this case to the presiding judge of the Superior Court of Thurston-Mason County for correction of the findings and decree in accordance with this decision. If further surveying costs are involved in describing the upland boundary, the parties will share equally in such costs.

PETRIE, C. J., and ARMSTRONG, J., concur.

Petition for rehearing denied March 29, 1971.

Review denied by Supreme Court May 6, 1971.