[No. 48183–1.  En Banc.  March 31, 1983.]

ISLAND COUNTY, ET AL, *Appellants,* v. DILLINGHAM
DEVELOPMENT COMPANY, ET AL, *Respondents.*

*David F. Thiele, Prosecuting Attorney,* and *Alan R. Hancock, Deputy,* for appellants.

*Thom, Navoni, Pierson, Ryder & Major,* by *Stephen P. Ryder* and *Maureen E. Ryan* and *Lenihan, Ivers & McAteer,* by *James C. Hanken,* for respondents.

DORE, J.—Island County appeals the trial court's dismissal of its complaint against Dillingham Development Company, which alleged an illegal conveyance of property without prior County subdivision approval. We affirm.

## I

On June 14, 1978, respondent Dillingham Development Company (Dillingham) filed and recorded a statutory warranty deed in Island County. The deed covered a division of approximately 270 acres owned by Dillingham, commonly known as the Keystone Spit and Crockett Lake on central Whidbey Island in Island County, Washington. A total of 118 lots were created. The lots were sold and conveyed by means of a deed to Mr. and Mrs. Edgar A. Scholz (Scholz) and Mr. and Mrs. Clyde A. Wagner (Wagner) in alternating ownerships, such that no two parcels owned by either Scholz or Wagner adjoined one another. Scholz and Wagner purchased the entire property for a total of $310,000. No prior County subdivision approval under State and local subdivision regulations was obtained.

A portion of State Route 20 (SR 20), a scenic and recreational state highway pursuant to RCW 47.39.020(8), proceeds easterly and northerly through the Keystone Spit and Crockett Lake area from the Keystone ferry slip. See map. Dillingham's property north of SR 20 was divided into 27 tracts, each of which contains 5 or more acres. The majority of these tracts is covered by the waters of Crockett Lake, such that the land portion of each tract consists of less than 5 acres. The legal descriptions of 26 of the 27 tracts north of SR 20 are by metes and bounds (tracts A through Z attached as exhibits to the statutory warranty deed), while the legal description of the 27th tract is a combination of

SR20

Crockett
Lake

Wagner/Scholz
Plats
SR20

Fort Casey
State
Park

Chicago-Brooklyn
platted lots

Keystone Ferry
Landing,
Keystone Harbor

Admiralty Bay

property described by metes and bounds and certain lots in the 1890 plat of Brooklyn (tract CC).

Eighty–seven of the tracts conveyed by Dillingham to Scholz and Wagner consist of property platted in 1890 as the plats of Brooklyn and Chicago pursuant to Washington's old map act of 1881, now RCW 58.08. These tracts are situated south of SR 20 and are bordered on the south by Admiralty Bay. They are referred to as parcels 1 through 85 and tracts BB and GG in the attachments to the statutory warranty deed describing the parcels which were created. The 87 parcels lying within the 1890 plats of Brooklyn and Chicago are described in terms of lots and halves of lots in these old plats. A number of lots and lot halves were grouped together to create parcels which were conveyed to Scholz and Wagner. Sixty–six of these 87 parcels include halves of lots from the plats of Brooklyn and Chicago. The lots within the plats of Brooklyn and Chicago were only 25

feet wide, while Island County's zoning ordinance requires a minimum lot width of 60 feet. By combining two 25–foot–wide lots and another half of a lot within a series of adjacent blocks, parcels 62.5 feet wide were created to comply with Island County's lot width and area requirements.

The property in question is almost identical to the property in *Swift v. Island Cy.*, 87 Wn.2d 348, 552 P.2d 175 (1976), in which much of the history of the property is set forth. The area is of historical significance, as it was the first permanent settlement on Whidbey Island. Fort Casey Historical State Park is located to the west of the property. The property is included in the Central Whidbey Island Historical District, which has been placed in the National Register of Historic Sites.

On January 8, 1979, Island County and the State of Washington filed suit against Dillingham, Scholz and Wagner. They contended that the division of land affected by the conveyance from Dillingham to Scholz and Wagner constituted an illegal subdivision, in violation of RCW 58.17 and chapter 16.01 of the Island County Code.

Pending trial, a companion matter arose in *Friends of Ebeys v. Board of Cy. Comm'rs*, 27 Wn. App. 54, 614 P.2d 1330 (1980). The issue in *Ebeys,* in which the defendant Wagner and Island County were parties, was the legality of certain 5–acre tracts created by the division of a 318–acre farm. The Court of Appeals affirmed the trial court's dismissal of the complaint, upholding the exemption of the 5–acre tract from local zoning ordinances and state statutes.

In 1981, the Legislature approved certain amendments to RCW 58.17. Chapter 293 of the Laws of 1981 expanded the definition of "subdivision," eliminated the term "resubdivision" and created an exemption from the platting process for the adjustment of boundary lines which do not result in the creation of a new lot, or tract, etc.

Given these developments, the owners moved for summary judgment declaring the legality of the 5–acre tracts, parcels A through Z. The County also moved for summary judgment based on its complaint. The trial court ruled that

the "division" of the approximate 230 acres of unplatted ground into 5–acre tracts was categorically exempt from the subdivision law. The trial court also held that the Chicago and Brooklyn combinations were exempted from section 6 of the Island County Code, reasoning such combinations were boundary line adjustments which did not result in the creation of any additional lots. Accordingly, the trial court dismissed the County's complaint.

## II

On appeal, the County now urges that the aggregation of lots and halves of lots in a single ownership within the 1890 plats constitutes a "resubdivision" (and thus a "subdivision") under RCW 58.17.020(1), requiring prior County subdivision approval.

█ RCW 58.17.020(1), as amended by the Laws of 1981, ch. 293, § 2, defines "subdivision" as "the division or redivision of land into five or more lots, tracts, parcels, sites or divisions for the purpose of sale, lease, or transfer of ownership" excepting short subdivisions of four or fewer lots. Island County Code 16.01.003 defines "subdivision" as "[a] division of a lot, tract or parcel of land into two or more lots or other divisions of land for the purpose, immediate or future, of transfer of ownership, or development, including all changes in streets or lot lines".

Island County's interim zoning ordinance in 17.01.018(b) specifically allows combinations and also allows combinations to include "portions" of lots:

> If two or more lots or combinations of lots *and portions of lots* with continuous frontage in single ownership are of record at the time of passage or amendment of this chapter, and if all or part of the lots do not meet the requirements established for lot width and area, the lands involved shall be considered to be an undivided parcel for the purpose of this chapter, and no portion of said parcel shall be used or sold in a manner which diminishes compliance with lot width and area requirements established by this chapter nor shall any division of any parcel be made which creates a lot width or area below the requirements stated in this chapter.

(Italics ours.) Under this ordinance, it is clear a combination can include portions of lots if they are used in a manner designed to comply with width and area requirements.

After resolution of the *Swift* case, the prosecutor wrote Dillingham on May 31, 1977 that the two tracts were not contiguous.[1] The owners met extensively with various Island County officials in an effort to satisfy the County's environmental and health concerns. The first meeting was held on June 23, 1977. Attending were the assessor, the prosecutor, the health department representative, and the owners. At the meeting, it was agreed the owners would accede to the request of the County that the conveyances be "corrected;" those portions of the property that were within the plats of Brooklyn and Chicago would be reconveyed pursuant to current zoning plats. There was no objection to the use of metes and bounds descriptions for the remainder of the property located in the Donation Land Claims.[2]

---

[1]The text of the letter reads as follows:

"It has come to the attention of this office that land has been conveyed by Dillingham to one Wayner [*sic*] and one Seholz [*sic*] by warranty deed filed under Auditor's No. 309595. Although the land transferred was noted to be in excess of five acres and thus exempt from the provisions of Island County Short Plat and Short Subdivisions Ordinance, Island County Code Chapter 16.04, the land is divided by a public road which renders the two tracts not contiguous. In our opinion the tracts thus separated may not have their area added together for the purpose of claiming an exemption under the Island County Ordinance for lots which exceed five acres in area.

"Please find enclosed a copy of ICC 16.04.027 through –.030. I am requesting a written assurance from Dillingham Corporation that future land transactions will not violate the Island County Short Plat and Subdivision Ordinance." Exhibit 4.

[2]Testimony of the Island County Planning Director was:

"Q. Do you recall the basis on which you rendered that opinion [letter of August 2, 1977] or can you recall the basis on which you rendered that opinion?

"A. Well, that the basis of that was my understanding of the law and this was originally cited during the *Swift* court case as what would happen as an alternative to having the plat replatted remain in force. *It was our opinion at that time that there could be these massing together of the undersize lots to form building lots and sold separately.*

"Q. *That is based on the zoning code that was in effect during that particular period of time?*

The assessor stated the proper way to identify the properties would be

> by the lots and blocks of the original plats after the Kellog donation land claim and that the other properties not, in that plat, be described by meets [*sic*] and bounds or bearings and distances from some known point in which we used a geodesic marker.

Clerk's Papers, at 433.

In his testimony, the assessor confirmed that the owners had followed his request with respect to identification of the properties as separate legal entities.

As to certain platting and zoning issues that arose in the meeting, the prosecutor stated in his deposition that

> everyone in attendance agreed that . . . a plat was a plat and you could convey those lots in the plats of Brooklyn and Chicago and if you wanted to get a larger hunk of land that would meet both market conditions and modern day requirements, you have to have enough territory for drain fields and set back, that you could simply take several of these lots that were side by side including the portion of the territory which now belonged to those lots

---

"A. *Yes.*

"Q. *Specifically sections 5 and 6?*

"A. *Specifically in regards to section 6,* section 5—pertaining to parking spaces. Section 6 is minimal lot requirements.

"Q. And section 7 also?

"A. Yes.

"Q. *And section 7 [previously section 6 of Island County's interim zoning ordinance] is the one that allows the grouping together of lots for purposes of complying with the zoning ordinance, does it not?*

"A. *That is correct. That section 7 is an attempt to stop the sale of individual undersize lots when there are a number of these undersize lots owned by an individual.*

"Q. *And it does also allow the sale of those lots if they are grouped together in sufficient density to comply with the then–current square footage requirements of the zoning code, is that correct?*

"A. *Certainly.*

" . . .

"Q. Section 7 of the zoning code does allow recognition of the use of undersized lots if they are grouped together in sufficient multiples to meet the density requirements called for in section 6, is that correct?

"A. Yes, I think that would be fair to state that (sic) what section 7 says." (Italics ours.) Clerk's Papers, at 379–81.

because roads had been vacated and convey that without the necessity of getting a new plat pursuant to RCW 5817 [*sic*].

Clerk's Papers, at 487–88.

The owner then met with the planning director on June 27, 1977 to discuss the result of the June 23, 1977 meeting. He also met again with the health officer to determine the number of lots to be combined to meet the square footage required for septic tanks. He was advised that health department regulations require a building site to have at least 12,500 square feet in order to utilize septic tanks.

On August 2, 1977, the planning director wrote to Wagner and confirmed that the proposed conveyances of lots in the plats of Brooklyn and Chicago could be transferred legally using lot and block descriptions so long as the lots were sold in multiples sufficient to meet current zoning and sanitary standards.[3] The planning director acknowledged in his deposition that the local zoning ordinance allowed the consolidation of lots in numbers sufficient to comply with current area and frontage requirements.

Based on the suggestions of the auditor and the prosecuting attorney, the respondents combined 400 Brooklyn and Chicago plat undersized lots by changing boundaries, incorporating lots or half lots to fulfill the minimum requirements of a 60–foot–wide lot and an area of at least 12,500 feet. This was done in accordance with section 6 of the Island County interim zoning ordinance[4] which authorized grouping of undersized lots in sufficient multiples to

---

[3] The text of the letter reads:

"It is my understanding that, although certain road rights–of–way in the plats of Brooklyn and Chicago were vacated, the lots and blocks were not. It is my opinion that, given the foregoing, the individual lots constitute a legal segregation of property and, as long as they are sold in multiples sufficient to meet current zoning and sanitary standards, can be transferred legally using lot and block descriptions." Exhibit 6.

[4] Section 6 of the Island County interim zoning ordinance has been renumbered as section 7 in the current version used in the deposition. Clerk's Papers, at 381.

meet density requirements.

We hold that the Chicago and Brooklyn combinations were boundary line adjustments which did not result in the creation of any additional lots, and were thus exempt from the platting requirements of the local planning commission.

## III

We next consider the issue of whether tracts larger than 5 acres each, but which are largely covered by water, are exempt from platting requirements under an exemption for 5-acre divisions of "land".

In *Friends of Ebeys v. Board of Cy. Comm'rs,* 27 Wn. App. 54, 59, 614 P.2d 1330 (1980), the court held that RCW 58.17.040 exempted 5-acre tract conveyances from State and Island County platting regulations.

The County now argues that the 5-acre exemption provided in RCW 58.17.040 is applicable only to divisions of *land* into tracts of 5 acres or larger. A major portion of each of the purported 5-acre tracts on the Crockett Lake side of SR 20 is under water, as part of the bed of Crockett Lake. The lake itself is "nonnavigable", and expanded in area due to a malfunction of the tide gates which regulated its level. The County reasons that these tracts are not exempt because they do not include 5 acres of "land," and the defendant should not be permitted to use the underwater portion of these tracts for purposes of determining whether they are exempt from platting requirements.

With respect to nonnavigable waters, the boundary of *land* abutting nonnavigable lakes, ponds, streams and bodies of water is the "thread" of the stream. In the case of nonnavigable lakes, the boundary of land extends to the center line of the lake. *See Powell v. Schultz,* 4 Wn. App. 213, 481 P.2d 12 (1971); *Parker v. Farrell,* 74 Wn.2d 553, 445 P.2d 620 (1968); *Glenn v. Wagner,* 199 Wash. 160, 90 P.2d 734 (1939); and *Harper v. Holston,* 119 Wash. 436, 205 P. 1062 (1922).

In *Litka v. Anacortes,* 167 Wash. 259, 9 P.2d 88 (1932), the court noted that property owners whose property line

abuts a nonnavigable lake own the property to the center of the lake. In *In re Clinton Water Dist.,* 36 Wn.2d 284, 287, 218 P.2d 309 (1950), the court stated:

> When the respondents or their predecessors in interest acquired their patents, they acquired title to the center of the lake, and riparian rights attached and became appurtenant thereto or incidents of their ownership. They became vested property rights and are included in the protection afforded by Art. I, § 16, of the state constitution, providing that private property shall not be taken or damaged for public or private use without just compensation.

The constitutional protection afforded riparian owners has often been affirmed. *Bach v. Sarich,* 74 Wn.2d 575, 445 P.2d 648 (1968); *State ex rel. Schillberg v. Everett District Justice Court,* 19 Wn. App. 421, 575 P.2d 1096 (1978). The constitutional protection of riparian rights certainly extends to the entire property upon which they are based. Ignoring the vested rights of persons owning property partially covered by Crockett Lake would be no less than a taking of property without just compensation. Such taking as a result of zoning ordinances has specifically been declared a constitutional violation. *See Bach v. Sarich, supra.*

As the term "land" is not defined in the State platting act or in the County's subdivision ordinance, we must accord this term its ordinary meaning. *Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 598 P.2d 387 (1979). Black's Law Dictionary 1019 (4th rev. ed. 1968) gives the following legal definition of "land":

> "Land" includes not only the soil or earth, but also things of a permanent nature affixed thereto or found therein, whether by nature, as *water,* trees, grass, herbage, other natural or perennial products, growing crops or trees, mineral under the surface, or by the hand of man, as buildings, fixtures, fences, bridges, as well as works constructed for use of water, such as dikes, canals, etc.

(Italics ours.) We conclude the definition of "land" within the ordinance includes that part of the lots under water.

CONCLUSION

The owners were diligent in conveying the property in a manner which complied with State statutes and with County platting regulations. We find the *Ebeys* case applicable and hold the partially submerged 5–acre tracts exempt from State statutes and Island County platting ordinances.

We affirm the trial court's dismissal of the County's complaint against Dillingham Development Company.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.