Honorable David Skeen Jefferson County Prosecuting Attorney Courthouse — P.O. Box 1220 Port Townsend, WA 98368
Dear Mr. Skeen:
By letter previously acknowledged, you have requested our opinion on a series of questions we have rephrased into the following single question:
 In AGLO 1974 No. 7 and again in AGO 1996 No. 5, the Attorney General's Office concluded that a county is not obligated to honor, for purposes of administering its land use regulations, an undeveloped plat filed before 1937, and would have the option of requiring the land covered by such a plat to be replatted or resubdivided to meet current land use regulations. Does the Growth Management Act (Chapter 36.70A RCW), especially as amended by Laws of 1997, Chapter 429, convert this "option" into a mandate, by requiring counties to maintain the rural character of lands located outside urban growth areas?
For the reasons stated in the analysis below, we answer this question in the negative.
 ANALYSIS
Your letter makes reference to two earlier opinions issued by this office. In AGLO 1974 No. 7, we considered the situation presented by the unincorporated ghost town of Ruby, in Okanogan County, in which a plat had been filed about 1890 under territorial platting codes. Although a small town had briefly existed on the site, it had long since been abandoned and, as of 1974, the plat consisted of open grazing land, primarily owned by a single party. In response to a question from the Prosecuting Attorney, we concluded that the County could apply its current platting law if the owner of the land covered by the Ruby plat now sought to develop it. In other words, we concluded that the mere platting of land in 1890 (under an act which provided for no governmental review and approval, in marked contrast to modern land use laws) did not give the owners of the land a vested right to develop the land a century later.
We followed this opinion in AGO 1996 No. 5, concluding (among other things) that a county could require the owner of an undeveloped pre-1937 plat to comply with current county land-use laws before permitting development of the land in question. We added a caveat to our opinion, however, to the effect that its principles could not automatically be applied to plats which had been partially or fully developed. We recommended that any county ordinance on the subject ". . . clearly specify the extent to which it requires replatting of land platted under earlier laws, and to set up substantive standards and/or procedural options to handle the obstacles which may be encountered in dealing with partially sold/partially developed plats." AGO 1996 No. 5 at p. 5.
Your new question is about the relationship of the "option" discussed in these two former opinions to the responsibilities of a county under the Growth Management Act, codified as Chapter 36.70A RCW. You have especially asked about the impact of 1997 amendments to this act contained in Laws of 1997, ch. 429. As amended, RCW 36.70A.070 requires each county's comprehensive plan to include a rural element and sets forth standards to be followed in defining this element. Counties are directed to adopt techniques which will "accommodate appropriate rural densities and uses that are not characterized by urban growth and that are consistent with rural character" and to ". . . reduce the inappropriate conversion of undeveloped land into sprawling, low-density development in the rural area." You note that Jefferson County alone has a large number of lots platted before 1937, many of them inconsistent with current notions of "rural character" or "rural density." In light of this, you inquire whether the county, in order to meet its obligations under the Growth Management Act, is actually obligated to require the resubdivision of any land in the county which was platted before 1937, because otherwise the county may be held to be out of compliance with its Growth Management Act obligations.
While we recognize that the Growth Management Act requires counties to apply their planning and enforcement efforts to meet the goals and obligations contained in the Act, we do not read the Act as any absolute requirement that counties require resubdivision of all existing undeveloped or partially-developed plats which are inconsistent with the county's comprehensive plan. We reach this conclusion for two related reasons.
First, the language of the Growth Management Act gives each county considerable leeway in deciding how to apply the Act's requirements to local conditions. RCW 36.70A.030(15) defines "rural development" to consist of a "variety of uses and residential densities, including clustered residential development, at levels that are consistent with the preservation of rural character and the requirements of the rural element." RCW36.70A.070(5), relating to the required rural element in comprehensive plans, contains several provisions authorizing counties to vary from any single, fixed, notion of appropriate rural density. Subsection (5)(a) provides that ". . . [b]ecause circumstances vary from county to county, in establishing patterns of rural densities and uses, a county may consider local circumstances, but shall develop a written record rexplaining how the rural element harmonizes the planning goals in RCW 36.70A.020
and meets the requirements of this chapter." Subsection (5)(b) specifically provides that the element include ". . . a variety of rural densities, uses, essential public facilities, and rural governmental services . . ." and goes on to state that ". . . counties may provide for clustering, density transfer, design guidelines, conservation easements, and other innovative techniques that will accommodate appropriate rural densities and uses that are not characterized by urban growth and that are consistent with rural character." Subsection (5)(d) contemplates that rural elements will include "[l]imited areas of more intensive rural development . . ." describing examples. We could find no language here or elsewhere in the Growth Management Act either expressly requiring the replatting of old plats or setting such a firm planning standard as to amount to such a requirement. The Act leaves room for counties to consider a variety of elements in planning in rural areas, and the extent and location of previously platted tracts of land is one logical element to consider.
Our second major reason for concluding that the Growth Management Act does not require the replatting of all old plats is found in the cautionary language in our earlier opinions. In both of those opinions, we concentrated on pre-1937 plats which remained undeveloped and were still in single ownership. As we noted in AGO1996 No. 5, "[i]n such a case, property owners can claim no serious prejudice if, before actually selling or developing such land, they are required to comply with the 1969 act and any ordinances and rules enacted under it. . . ." However, we go on to note that many pre-1937 plats have been sold or developed to varying extents.
There are too many variables for us to suggest any fixed "bright line" in deciding which land can be subjected to replatting or current subdivision requirements. Does the land remain in single ownership? How many lots have been sold? Is the undeveloped portion of the plat a single block of land, or is the plat a "checkerboard" of developed and undeveloped lots? Is the land adjacent to an urban growth area, or to an unincorporated village or hamlet, or is it distant from even rural development? Is there any evidence that the platting has affected the market value of the land, or its tax assessment? If current subdivision regulations were applied to the plat, would it render some or all of the land economically worthless? Every plat reflects at least a historical expectation of development, and the acts taken in reliance of this expectation could vary from none at all to the expenditure of considerable money and effort. Given these variables, we think counties will not be able to avoid a sensitive, particularized analysis of their individual situations, leading to the development of standards that make sense for a particular county. We would expect the Growth Management Hearings Boards and the courts to recognize a county's difficulty in balancing the equities in these cases, but we cannot guarantee the success of any specific approach.
Recent case law in the area underscores our cautious counsel on this issue. Even before our 1996 opinion, in Island County v.Dillingham Development Co., 99 Wn.2d 215, 662 P.2d 32 (1983), the State Supreme Court permitted a property owner to aggregate the small lots in a pre-1937 plat without requiring replatting or review by the county under current zoning law. The court viewed the aggregation as a "boundary line adjustment." Because the case is based on the peculiar circumstances of the particular plat before the court, we do not consider its holding inconsistent with our earlier opinions to the effect that a county can require resubdivision of undeveloped plats under some circumstances. Still, Dillingham would undoubtedly be cited in any challenge to our conclusions, and its reasoning could be extended to other cases involving old plats, especially where the equities were strongly in favor of the property owner.
The same is true of the recent case of Noble Manor Co. v. PierceCounty, 133 Wn.2d 269, 943 P.2d 1378 (1997), in which the Court found that the filing of a "short plat" conferred on the property owner a "vested right" to develop the plat according to the land use regulations in effect at the time. The Court was careful to state that its decision was based upon the conclusion that a statute (RCW 58.17.033) conferred this "vested right" and did not amount to an expansion of the Court's general rule (see, e.g.,Friends of the Law v. King County, 123 Wn.2d 518, 869 P.2d 1056
(1994)) that "vesting" occurs only upon the filing of a complete building permit application. Like the Island County case, NobleManor was largely decided on the equities of the case before the Court. Both cases illustrate that the courts may search for new guiding principles when the equities are sufficiently strong.
To conclude, we reaffirm our previous opinion that a county may require a new review under Chapter 58.17 RCW, and potentially a replatting or new subdivision, of undeveloped land, still in single ownership, which was platted before 1937. However, we decline to read the Growth Management Act as absolutely requiring counties to "dishonor" their old plats.
We trust you will find the foregoing useful.
Very truly yours,
CHRISTINE O. GREGOIRE
JAMES K. PHARRIS Sr. Assistant Attorney General